1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DAN LEROSS MOSS,                              No.  2:12-cv-1181-WBS-EFB P

12                   Petitioner,

13          vs.                                    FINDINGS AND RECOMMENDATIONS

14   AMY MILLER,

15                   Respondent.[1]

16

17          Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.  He challenges a judgment of conviction entered against him in

19   2010 on two counts of sexual penetration of a child 10 years of age or younger.  He seeks federal

20   habeas relief on the following claims: (1) that the trial court violated his federal constitutional

21   rights in admitting evidence of a prior offense to impeach his testimony and in admitting a

22   videotape of the victim's statements to medical personnel; (2) that jury instruction error violated

23   his right to due process; (3) that his trial counsel rendered ineffective assistance; (4) that the

24   evidence is insufficient to support the jury's verdict; and (5) that prosecutorial misconduct

25   _____

26          [1]   Connie Gibson was previously named as respondent.  The court now substitutes in the
     correct respondent, the Warden of the California State Prison-Centinela, where petitioner is
27   presently incarcerated.  "A petitioner for habeas corpus relief must name the state officer having
     custody of him or her as the respondent to the petition."  *Stanley v. California Supreme Court*, 21
28   F.3d 359, 360 (9th Cir. 1994) (citing Rule 2(a), 28 U.S.C. foll. § 2254).  *See also Smith v. Idaho*,
     392 F.3d 350, 355-56 (9th Cir. 2004).

violated his right to due process.  Upon careful consideration of the record and the applicable law,

it is recommended that petitioner's application for habeas corpus relief be denied.

## I.  Background[2]

A jury found defendant Dan Leross Foxx Moss guilty of two counts of sexual penetration of a child 10 years of age or younger (Pen.Code,[3] § 288.7, subd. (b)).  The trial court sentenced him to prison for a term of 15 years to life on each count (which is the only sentence available for the crime) and elected to run the two terms consecutively.

* * *

**FACTS**

In June 2008, defendant was living in an apartment with his fiancée, S.S., and S.S.'s sister, P.W.  During the afternoon of June 4, T.L., another sister of P.W., dropped off three of her children, including her three-year-old daughter, J. J., at the apartment for babysitting by P.W.  T.L. was to pick the children up by 8:30 p.m. because P.W. had a date with her boyfriend, Gineo, at 10:30 p.m.

When T.L. did not show up, P.W. put the children to bed in her bedroom about 9:30 p.m.  Defendant was not at home at the time. When Gineo failed to show by midnight, P.W. took a shower. After showering, P.W. went into the living room and saw defendant sitting on a large couch and J.J. sitting on a smaller couch, eating ice cream.  About that time Gineo and two of his cousins arrived, stayed until 3:00 a.m., and then left.  J.J. never said anything to P.W. about defendant improperly touching her.

The children were picked up on June 5 and taken back to T.L.'s apartment.  There, J.J. told T.L. that "[P.W.'s] friend" had licked his finger and touched her "coo-coo" and "boo-boo," words she used to describe her vagina and butt.  J.J. said that after the touching, defendant gave her ice cream and told her, "'You're the best.'"

T.L. returned to P.W.'s apartment with J.J. and the child repeated to P.W. what defendant had done to her.  Defendant denied having improperly touched J.J.  The confrontation turned physical with T.L. and P.W. punching defendant.    During the altercation, defendant said, "Yeah, I did it.  What are you going to do about it," but then immediately took the statement back saying that he would never touch the kids.

---

[2]  In its unpublished opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary.

[3]  References to undesignated sections are to the Penal Code.

T.L. and P.W. left the apartment and took J.J. to the hospital where she was examined by a nurse practitioner.  J.J. told the nurse, "My butt hurts," and that "Pam's friend" put his finger in her "butt" and "coo-coo" when she was asleep, that she told him "no," and then he gave her ice cream.  Aside from a small abrasion near J. J.'s hymen, which could have been caused by a finger, including that of J. J., or other object being inserted into the area, there were no physical signs of sexual abuse.

J.J. testified that defendant touched her "coo-coo" and "boo-boo" with his finger while they were sitting in P.W.'s apartment, but she denied that defendant gave her ice cream afterward.  At one point, she denied ever having seen defendant before.

On July 24, 2008, J.J. was interviewed at the Special Assault and Forensic Evaluation (SAFE center), and the interview was videotaped and played for the jury.  Although J.J. initially denied that anything had been done to her, she eventually told the interviewer that defendant had touched her butt and "coo-coo" with his finger while they were on the couch in P.W.'s apartment.

At trial, evidence was introduced that on March 5, 2005, N.G. left her eight-year-old daughter, T. N., for babysitting with defendant and S.S.  T. N., who was 13 years old at the time of the trial in this matter, testified that while she was sitting on the couch watching television with defendant, he put his hand inside her shorts and into her vagina and kept it there for about 10 seconds.  T.N. moved to a different location to watch TV, but defendant followed and began rubbing her leg.   T.N. went into the kitchen and defendant went to bed, ending the molestation.

Defendant testified and denied molesting J.J.   According to defendant, he went to bed around 9:00 p.m., but the sound of the children awakened him about 11:30 p.m. and he went back into the living room and lay on the sofa.  P.W. put the children to bed and returned to watch television with defendant.  Defendant fell asleep but heard P.W. leave the apartment.  Shortly thereafter, J.J. and her brother went into the living room, which awakened defendant.  Defendant got a popsicle from the freezer and gave it to the children to keep them quiet.

P.W. came back in the apartment with her boyfriend, became upset when she saw the children eating the popsicle, and began yelling at defendant.  P.W. put the children to bed, and defendant spent the night in the living room.  Defendant admitted being with J.J. and her brother for about 35 to 45 minutes, but denied ever being alone with J. J.

T.L. returned to P.W.'s apartment with J.J. the evening of June 5, 2008, and accused defendant of molestation.  Defendant denied doing so and suggested she call the police.  T.L. and P.W. started hitting him.  Defendant denied saying, "I did it.  What are you going to do about it," but instead had said, "I did it, huh?  Well then I'll call the police."

3

1
2
3

> Defendant denied molesting T. N., but admitted pleading guilty to child endangerment with her.  He did so, he claimed, because he was spending so much time in court that his employer threatened to fire him.

4    ECF No. 17-1 (Opinion) at 1-8.

5    **II.     Analysis**

6        **A.      Standards of Review Applicable to Habeas Corpus Claims**

7            An application for a writ of habeas corpus by a person in custody under a judgment of a

8    state court can be granted only for violations of the Constitution or laws of the United States.  28

9    U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

10   application of state law.  *See Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*,

11   502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

12           Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

13   corpus relief:

14
15

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

16
17

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

18
19

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

20           For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

21   holdings of the United States Supreme Court at the time of the last reasoned state court decision.

22   *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S.

23   ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v.

24   Taylor*, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining

25   what law is clearly established and whether a state court applied that law unreasonably."  *Stanley*,

26   633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit

27   precedent may not be "used to refine or sharpen a general principle of Supreme Court

28   jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  *Marshall*

1   *v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155

2   (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so

3   widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

4   be accepted as correct.  *Id.*  Further, where courts of appeals have diverged in their treatment of

5   an issue, it cannot be said that there is "clearly established Federal law" governing that issue.

6   *Carey*, 549 U.S. at 77.

7           A state court decision is "contrary to" clearly established federal law if it applies a rule

8   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

9   precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).

10  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

11  writ if the state court identifies the correct governing legal principle from the Supreme Court's

12  decisions, but unreasonably applies that principle to the facts of the prisoner's case. [4] *Lockyer v.*

13  *Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002

14  (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

15  court concludes in its independent judgment that the relevant state-court decision applied clearly

16  established federal law erroneously or incorrectly.  Rather, that application must also be

17  unreasonable."  *Williams*, 529 U.S. at 412; *accord Schriro v. Landrigan*, 550 U.S. 465, 473

18  (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

19  review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

20  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

21  'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v.*

22  *Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

23  /////

24  /////

25  /////

26  ────────────────

27      [4]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
    overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
    presented in the state court proceeding."  *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,
28  384 F.3d 628, 638 (9th Cir. 2004)).

1    Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

2    must show that the state court's ruling on the claim being presented in federal court was so

3    lacking in justification that there was an error well understood and comprehended in existing law

4    beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

5         If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

6    court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

7    527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

8    (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

9    § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

10   considering de novo the constitutional issues raised.").

11        The court looks to the last reasoned state court decision as the basis for the state court

12   judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).  If

13   the last reasoned state court decision adopts or substantially incorporates the reasoning from a

14   previous state court decision, this court may consider both decisions to ascertain the reasoning of

15   the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When

16   a federal claim has been presented to a state court and the state court has denied relief, it may be

17   presumed that the state court adjudicated the claim on the merits in the absence of any indication

18   or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85.  This

19   presumption may be overcome by a showing "there is reason to think some other explanation for

20   the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797,

21   803 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims

22   but does not expressly address a federal claim, a federal habeas court must presume, subject to

23   rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, 133 S. Ct.

24   1088, 1091 (2013).

25        Where the state court reaches a decision on the merits but provides no reasoning to

26   support its conclusion, a federal habeas court independently reviews the record to determine

27   whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v.*

28   *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

1   review of the constitutional issue, but rather, the only method by which we can determine whether

2   a silent state court decision is objectively unreasonable."  *Himes*, 336 F.3d at 853.  Where no

3   reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

4   reasonable basis for the state court to deny relief."  *Richter*, 131 S. Ct. at 784.

5       When it is clear, however, that a state court has not reached the merits of a petitioner's

6   claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

7   habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

8   F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

9       **B.    Petitioner's Claims**

10          **1.    Admission of Evidence of Uncharged Offense**

11      In his first claim for habeas relief, petitioner argues that the trial court violated his federal

12  constitutional rights in admitting evidence of his prior molestation of T.N. to show that he had a

13  propensity to commit the charged offenses, and in instructing the jury that they could consider

14  this prior conduct to infer that he was disposed to commit the charged crimes.  ECF No. 1 (Pet.)

15  at 7, 34-35; Resp't's Lodg. Doc. 5 at 27-31.[5]  Petitioner contends that the admission of this

16  evidence, along with the accompanying jury instructions, lessened the prosecutor's burden of

17  proof and denied him his right to have the jury determine every element of the charges against

18  him beyond a reasonable doubt.  *Id.*

19      The California Court of Appeal denied these claims, ruling as follows:

20          Defendant contends he was denied state and federal rights to due
            process when the court permitted the jury to consider his
21          molestation of T.N. as evidence that he had a propensity to commit
            the charged offenses.  Defendant acknowledges that the California
22          Supreme Court has rejected his arguments in *People v. Falsetta*
            (1999) 21 Cal.4th 903, but he states he is raising the claim for
23          possible review in the California Supreme Court and in federal
            court.  The contention is rejected and the issue preserved for
24          review.

25  ECF No. 17-1 at 20.

26  _____

27      [5]  Petitioner has attached several pages from his opening brief on appeal to substantiate
    the claims contained in the petition before this court.  In order to gain a complete understanding
    of petitioner's claims, this court has reviewed petitioner's entire opening brief and will cite to that
28  brief in these findings and recommendations, where appropriate.

1

**a.**     <u>**Background**</u>

2      The state court record reflects that the prosecutor made a motion in limine to admit

3   evidence of petitioner's prior misdemeanor conviction for sexual misconduct with T.N., pursuant

4   to Cal. Evid. Code § 1108.[6]  Clerk's Transcript on Appeal (CT) at 54, 79-86.  The trial court

5   overruled petitioner's objections to the admission of this evidence and granted the motion in

6   limine.  Reporter's Transcript on Appeal (RT) at 6-9.  The trial court also instructed the jury on

7   how to analyze evidence of petitioner's prior actions, as follows:

8
9
> The People presented evidence that the defendant committed the crimes of digital penetration with a child under the age of ten years old that was not charged in this case. . . .

10
11
12
13
> You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offense.  Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt.  A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that that fact is true.

14
15
16
17
18
19
> If the People have not met this burden, you must disregard this evidence entirely.
> If you decide that the defendant committed the uncharged offense, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit the crimes charged.  If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of the crimes charged.  The People must still prove each charge beyond a reasonable doubt.

20   CT at 143.

21

**b.**     <u>**Analysis of Due Process Claim**</u>

22      The question whether evidence of petitioner's prior acts was properly admitted under

23   California law is not cognizable in this federal habeas corpus proceeding.  *Estelle v. McGuire*,

24   502 U.S. 62, 67 (1991).  The only question before this court is whether the trial court committed

25   _____

26      [6]  Cal. Evid. Code § 1108 provides, in relevant part, that in a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another

27   sexual offense is admissible unless it is substantially more prejudicial than probative.  In *People v. Falsetta*, the California Supreme Court held that admitting evidence of prior sexual assaults

28   under Cal. Evid. Code § 1108 did not deny the defendant due process.  21 Cal.4th 903.

1  an error that rendered the trial so arbitrary and fundamentally unfair that it violated federal due

2  process.  *Id.  See also Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) ("the issue for

3  us, always, is whether the state proceedings satisfied due process; the presence or absence of a

4  state law violation is largely beside the point").

5        The United States Supreme Court "has never expressly held that it violates due process to

6  admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that

7  it violates due process to admit other crimes evidence for other purposes without an instruction

8  limiting the jury's consideration of the evidence to such purposes."  *Garceau v. Woodford*, 275

9  F.3d 769, 774 (9th Cir. 2001), *overruled on other grounds* by *Woodford v. Garceau*, 538 U.S. 202

10 (2003).  Rather, the Supreme Court has expressly left open this question.  *See Estelle v. McGuire*,

11 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a

12 state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence

13 to show propensity to commit a charged crime").  *See also Mejia v. Garcia*, 534 F.3d 1036, 1046

14 (9th Cir. 2008) (holding that state court had not acted objectively unreasonably in determining

15 that the propensity evidence introduced against the defendant did not violate his right to due

16 process); *Alberni v. McDaniel*, 458 F.3d 860, 863-67 (9th Cir. 2006) (denying the petitioner's

17 claim that the introduction of propensity evidence violated his due process rights under the

18 Fourteenth Amendment because "the right [petitioner] asserts has not been clearly established by

19 the Supreme Court, as required by AEDPA"); *United States v. LeMay*, 260 F.3d 1018 (9th Cir.

20 2001) (Fed. R. Evid. 414, permitting admission of evidence of similar crimes in child molestation

21 cases, under which the test for balancing probative value and prejudicial effect remains

22 applicable, does not violate the due process clause).  In light of this authority, the state court's

23 rejection of petitioner's due process claim is not contrary to United States Supreme Court

24 precedent.

25        Further, any error in admitting evidence of petitioner's prior bad acts did not have "a

26 substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v.*

27 *Abrahamson*, 507 U.S. 619, 637 (1993).  *See also Penry v. Johnson*, 532 U.S. 782, 793-96

28 (2001).  The record reflects that the state trial judge struck an appropriate balance between

petitioner's rights and the clear intent of the California legislature that evidence of prior similar acts be admitted in sexual offense prosecutions.  The trial court held a hearing on the prosecutor's motion to exclude evidence of petitioner's prior acts involving T.N. and concluded that the challenged evidence was relevant, appropriate, and allowed by California law.  Further, the accompanying jury instructions did not compel the jury to draw an inference of propensity.  Rather, the trial court instructed the jury at the close of the evidence that if they found petitioner had committed the prior sexual offenses they could, but were not required to, "conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses."  CT at 143.  The jury was also instructed that if they found that petitioner had such a disposition, they could, but were not required to, infer that he was likely to have committed the charged offenses.  *Id.*  The jury was further instructed that if they concluded that petitioner committed the prior acts, that conclusion was "only one factor to consider" and was "not sufficient by itself to prove that [petitioner] is guilty of the crimes charged."  *Id.*  In addition, the jury was instructed that the prosecution had the burden of proving all charges against petitioner beyond a reasonable doubt.  *Id.*  The jury is presumed to have followed all of these instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Brown v. Ornoski*, 503 F.3d 1006, 1018 (9th Cir. 2007).  Finally, the Ninth Circuit has noted that "[n]othing in the text of § 1108 suggests that the admissible propensity evidence would be sufficient, by itself, to convict a person of any crime.  Section 1108 relates to admissibility, not sufficiency."  *Schroeder v. Tilton*, 493 F.3d 1083, 1088 (9th Cir. 2007) (admission of evidence of defendant's prior sex crimes did not violate Ex Post Facto Clause).

Although the prior crimes evidence was potentially powerful, "[the fact] that prior acts evidence is inflammatory is not dispositive in and of itself."  *LeMay*, 260 F.3d at 1030.  Rather, "§ 1108 creates an exception to the general ban on propensity evidence, so that evidence of prior sexual misconduct may be presented to the jury to demonstrate propensity to commit the crime charged, provided that the prejudicial value of that evidence does not substantially outweigh its probative value."  *Schroeder*, 493 F.3d at 1087.  That was the case here.

The admission of petitioner's prior acts of sexual misconduct did not violate any right clearly established by United States Supreme Court precedent or result in prejudice under the

1   circumstances of this case.  Accordingly, petitioner is not entitled to relief on his due process

2   claim.

3                           **c.        Analysis of Jury Instruction Claim**

4           Petitioner also claims that the jury instructions given at his trial, set forth above, allowed

5   him to be convicted on lesser proof than beyond a reasonable doubt.

6           Due process "requires the prosecution to prove every element charged in a criminal

7   offense beyond a reasonable doubt." *Gibson v. Ortiz*, 387 F.3d 812, 820 (9th Cir. 2004),

8   *overruled on other grounds* by *Byrd v. Lewis*, 566 F.3d 855, 866 (9th Cir. 2009) (citing *In re*

9   *Winship*, 397 U.S. 358, 364 (1970)).  If the jury is not properly instructed concerning the

10  presumption of innocence until proven guilty beyond a reasonable doubt, a denial of due process

11  results.  *See Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam).  "Any jury instruction

12  that 'reduce[s] the level of proof necessary for the Government to carry its burden . . . is plainly

13  inconsistent with the constitutionally rooted presumption of innocence.'"  *Gibson*, 387 F.3d at

14  820 (quoting *Cool v. United States*, 409 U.S. 100, 104 (1972) (per curiam)).

15          In *Gibson*, the U.S. Court of Appeals for the Ninth Circuit held that the 1996 version of

16  CALJIC No. 2.50.01 and CALJIC No. 2.50.1, when given together at a criminal trial, violate the

17  defendant's Fourteenth Amendment due process rights to be proven guilty beyond a reasonable

18  doubt because they allow a jury to: (1) find that a defendant had committed prior sexual offenses

19  by a preponderance of the evidence; (2) infer from those past offenses a predilection for

20  committing sexual offenses; and (3) further infer guilt of the charged offense based on those

21  predilections.  387 F.3d at 820.  CALJIC No. 2.50.01 was amended in 1999 to clarify how jurors

22  should evaluate a defendant's guilt relating to the charged offense if they found that he had

23  committed a prior sexual offense.  That revision added the following language: "However, if you

24  find by a preponderance of the evidence that the defendant committed prior sexual offenses, that

25  is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged

26  crimes."  CALJIC No. 2.50.01 (7th ed. 1999).  The instruction also provided that "[t]he weight

27  and significance of the evidence, if any, are for you to decide."  *Id.*  In 2002, CALJIC No. 2.50.01

28  was revised again.  The 2002 revision deleted the sentence "[t]he weight and significance of the

                                                      11

1    evidence, if any, are for you to decide," and inserted the following statement:  "If you determine

2    an inference properly can be drawn from this evidence, this inference is simply one item for you

3    to consider, along with all other evidence, in determining whether the defendant has been proved

4    guilty beyond a reasonable doubt of the charged crime."  CALJIC No. 2.50.01.  In *People v.*

5    *Reliford*, 29 Cal.4th 1007, 1016 (2003), the California Supreme Court upheld the constitutionality

6    of the 1999 version of CALJIC No. 2.50.01, but commented that it had been "improved" by the

7    addition of the sentence in the 2002 amendment.

8            Petitioner's jury was instructed with CALCRIM 1191, which is essentially the equivalent

9    of the 2002 version of CALJIC No. 2.50.01.  Challenges to the constitutionality of the 1999 and

10   2002 versions of CALJIC No. 2.50.01 have been rejected by numerous federal courts in

11   unpublished opinions.  *See, e.g., Abel v. Sullivan*, No. 08-55612, 2009 WL 1220761, *3 (9th Cir.

12   2009) (2002 version); *Smith v. Ryan*, 220 Fed. App'x 563, **3 (9th Cir. 2007) (1999 version);

13   *McGee v. Knowles*, 218 Fed. App'x 584, **1 (9th Cir. 2007); *Turner v. Adams*, No. C 07-6258

14   MHP (PR), 2010 WL 702268, *21 (N.D. Cal., February 25, 2010) (2002 version); *Cata v.*

15   *Garcia*, No. C 03-3096 PJH (PR), 2007 WL 2255224, *15-16 (N.D. Cal. Aug. 3, 2007) (1999

16   version); *Perez v. Duncan*, 2005 WL 2290311 (N.D. Cal. Sept. 20, 2005) (1999 version).

17           Based on the reasoning of the above-cited opinions, this court concludes that the decision

18   of the state court rejecting petitioner's claim that his jury instructions regarding propensity

19   evidence violated his right to a jury determination of all elements beyond a reasonable doubt is

20   not contrary to or an unreasonable determination of United States Supreme Court authority.

21   Accordingly, petitioner is not entitled to relief on this claim.

22                   **2.      Ineffective Assistance of Counsel**

23           Although the exact claims petitioner intends to raise in the instant petition are somewhat

24   difficult to decipher, he appears to be claiming that his trial counsel rendered ineffective

25   assistance in: (1) failing to prevent the admission into evidence of his prior bad acts against T.N.;

26   (2) failing to present a medical report which found no physical evidence of a sexual assault

27   against J.J.; and (3) failing to object to the trial court's admission into evidence of the tape

28   recording of J.J.'s statements to medical personnel.  Pet. at 9-11, 33, ECF No. 5 at 2.

1

### a.   State Court Decision

2

Petitioner raised these and other claims of ineffective assistance of counsel in habeas

3   corpus petitions filed in the California Superior Court and California Supreme Court.  Resp't's

4   Lodg. Docs. 13, 15.  The California Superior Court provided the last reasoned state court

5   decision, ruling as follows:

6
7
8
9
10
11
12
13
14
15

> A petitioner seeking relief by way of habeas corpus has the burden of stating a prima facie case.  (*In re Bower* (1985) 38 Cal.3d 865, 872.)  A petition should attach as exhibits all reasonably available documentary evidence or affidavits supporting the claim.  (*People v. Duvall* (1995) 9 Cal.4th 464, 474.)  To show constitutionally inadequate assistance of counsel, a defendant must show that counsel's representation fell below an objective standard and that counsel's failure was prejudicial to the defendant.  (*In re Alvernaz* (1992) 2 Cal.4th 924, 937.)  It is not a court's duty to second-guess trial counsel and great deference is given to trial counsel's tactical decisions.   (*In re Avena* (1996) 12 Cal.4th 694, 722.)   Actual prejudice must be shown, meaning that there is a reasonable probability that, but for the attorney's error(s), the result would have been different.  (*Strickland v. Washington* (1984) 466 U.S. 668, 694.)   A petition alleging ineffective assistance of counsel based on the failure to obtain favorable evidence must show what evidence should or could have been obtained and what effect it would have had.  (*People v. Geddes* (1991) 1 Cal.App.4th 448, 454.)

16

**A.  Right to Present Witnesses**

17
18
19
20
21

> Petitioner claims that he was denied the right to explain that he was not guilty of the charged offenses.  However, he admits that he testified at trial.  He later explains that he was "forced" to testify because trial counsel refused to present any witnesses on Petitioner's behalf.  However, Petitioner does not explain what witnesses counsel should have called or how they would have testified.  Consequently, he has not shown that counsel's refusal to call such witnesses was objectively unreasonable.

22

**B.  Inadmissible Evidence**

23
24
25
26
27
28

> Petitioner argues that that [sic] trial counsel allowed inadmissible evidence to be introduced, namely, evidence of a prior sexual offense.  According to the file in the underlying criminal case, the People's motion to admit evidence of a prior sexual assault pursuant to Evidence Code sections 1101(b) and 1108 was granted.  Although there is no indication whether defense counsel objected to the evidence, Petitioner has not shown that the evidence was inadmissible or that it constituted hearsay.   Petitioner further suggests that evidence of the prior offense took an excessive amount of time.  However, the minute orders show that other than the testimony of the victim and her family (relating to the substantive charges), the remaining witnesses consumed

1     approximately less than one day of testimony. Petitioner has not
2     shown that the undue consumption of time substantially outweighed
      the probative value of the evidence. (*See* Evid. Code, § 352.)

3     **C. Medical Examination**
      Petitioner claims that the parties concealed a report that was
4     exculpatory in that it stated that a medical examination of the victim
      was normal and Petitioner's DNA was not found. However, the
5     report is not attached to the petition. Therefore, Petitioner has
      shown neither ineffective assistance of counsel nor a *Brady*
6     violation. He is not entitled to any relief.

7  Resp't's Lodg. Doc. 14 at 2-3.

8                   **b.      Applicable Legal Standards**

9          The clearly established federal law for ineffective assistance of counsel claims is

10  *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a *Strickland* claim, a defendant

11  must show that (1) his counsel's performance was deficient and that (2) the "deficient

12  performance prejudiced the defense." *Id.* at 687. Counsel is constitutionally deficient if his or

13  her representation "fell below an objective standard of reasonableness" such that it was outside

14  "the range of competence demanded of attorneys in criminal cases." *Id.* at 687–88 (internal

15  quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a

16  fair trial, a trial whose result is reliable.'" *Richter*, 131 S.Ct. at 787-88 (quoting *Strickland*, 466

17  U.S. at 687).

18         A reviewing court is required to make every effort "to eliminate the distorting effects of

19  hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

20  conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 669; *see Richter*, 131

21  S.Ct. at 789. Reviewing courts must also "indulge a strong presumption that counsel's conduct

22  falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

23  This presumption of reasonableness means that the court must "give the attorneys the benefit of

24  the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel

25  may have had for proceeding as they did." *Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388,

26  1407 (2011) (internal quotation marks and alterations omitted).

27         Prejudice is found where "there is a reasonable probability that, but for counsel's

28  unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466

                                              14

1   U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the

2   outcome."  *Id.*  "The likelihood of a different result must be substantial, not just conceivable."

3   *Richter*, 131 S.Ct. at 792.

4         Under AEDPA, "[t]he pivotal question is whether the state court's application of the

5   Strickland standard was unreasonable."  *Id.* at 785.  "[B]ecause the *Strickland* standard is a

6   general standard, a state court has even more latitude to reasonably determine that a defendant has

7   not satisfied that standard."  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

8                      **c.**       **<u>Analysis</u>**

9         After a review of the record, this court concludes that petitioner is not entitled to habeas

10   relief on any of his claims of ineffective assistance of counsel.  With respect to his claim that trial

11   counsel improperly failed to prevent the admission into evidence of his prior bad acts against

12   T.N., the record reflects that counsel objected to the admission of this evidence on the grounds

13   that the evidence was substantially more prejudicial than probative.  Although the trial court

14   ultimately ruled that the evidence was admissible, counsel's arguments were thorough and

15   competent.  RT at 5-8.  In any event, as discussed above, the admission of evidence of petitioner's

16   prior acts with T.N. did not render petitioner's trial fundamentally unfair or have a substantial and

17   injurious effect on the verdict in this case.  Accordingly, even if petitioner's trial counsel rendered

18   deficient performance in failing to prevent the admission of this evidence, his actions did not

19   result in prejudice.

20         Nor is petitioner entitled to relief on his claim that his trial counsel improperly failed to

21   present a medical report which found no physical evidence of a sexual assault against J.J.  The

22   state court record reflects that the medical report of J.J.'s examination was admitted into evidence

23   and the nurse practitioner who generated the report was subjected to extensive cross-examination

24   by petitioner's trial counsel with regard to the report and its conclusions.  *Id.* at 271-312.  The

25   record reflects that trial counsel thoroughly explored the medical report and the conclusions stated

26   thereon.

27         Petitioner argues that his trial counsel should have ensured that the medical report was

28   given to the jury to look at, as opposed to simply questioning the nurse who prepared the report.

1    However, there is no indication from the record that the jury would have reached a different

2    verdict if they had seen the physical report, as opposed to hearing testimony from the nurse about

3    the report's conclusions.  Accordingly, petitioner has failed to show prejudice with respect to this

4    claim.

5           In state court, petitioner also claimed that his trial counsel failed to allow him to "speak

6    freely to the court and jurors to explain [he] was not guilty;" failed to make an "effective

7    challenge" to the charges against him; and failed to call any witnesses on his behalf, thereby

8    forcing him to testify.  Resp't's Lodg. Doc. 13 at consecutive pgs. 6, 7.  Assuming arguendo that

9    petitioner is raising these claims in the petition before this court, they must be denied.  The state

10   court record reflects that petitioner testified at trial and explained his version of events to the jury.

11   RT at 387, *et seq*.  There is no evidence that petitioner was "forced" to testify, was prevented

12   from speaking "freely," or was otherwise prevented from testifying fully by any actions of his

13   trial counsel.

14          With regard to the calling of witnesses, petitioner has failed to demonstrate that any

15   particular witness(es) would have agreed to testify or that any testimony would have been helpful

16   to his defense.  This failure precludes habeas relief on any claim that petitioner's trial counsel

17   rendered ineffective assistance in failing to call witnesses for the defense.  *See Dows v. Wood*,

18   211 F.3d 480, 486 (9th Cir. 2000) (to establish that counsel was ineffective for failing to produce

19   a witness at trial, a habeas petitioner must provide "evidence that this witness would have

20   provided helpful testimony for the defense," such as an affidavit from the alleged witness);

21   *Villafuerte v. Stewart*, 111 F.3d 616, 632 (9th Cir. 1997) (petitioner's ineffective assistance claim

22   denied where he presented no evidence concerning what counsel would have found had he

23   investigated further, or what lengthier preparation would have accomplished); *United States v.*

24   *Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (appellant failed to meet prejudice prong of

25   ineffectiveness claim because he offered no indication of what potential witnesses would have

26   testified to or how their testimony might have changed the outcome of the hearing).

27          Finally, petitioner's claim that his trial counsel failed to make an "effective challenge" to

28   the charges against him is unsupported by the record and is too vague and conclusory to warrant

1   federal habeas relief.  *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) ("'Conclusory

2   allegations which are not supported by a statement of specific facts do not warrant habeas

3   relief'") (quoting *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)).

4          In the traverse, petitioner argues that his trial counsel rendered ineffective assistance in

5   failing to effectively challenge the trial court's admission into evidence of the tape recording of

6   J.J.'s statements to medical personnel, and in failing to object to the prosecutor's misconduct

7   during his cross-examination of petitioner.  Traverse, ECF No. 24, at 10.  To the extent petitioner

8   is attempting to belatedly raise new claims in the traverse, relief should be denied.  *See*

9   *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (a traverse is not the proper

10  pleading to raise additional grounds for relief); *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971,

11  977 (9th Cir. 1994) ("we review only issues which are argued specifically and distinctly in a

12  party's opening brief").  Even if these claims had been properly raised, petitioner has failed to

13  demonstrate a constitutional violation, for the reasons set forth below in connection with

14  petitioner's claims of evidentiary error and prosecutorial misconduct.

15              **3.        Insufficient Evidence**

16         Petitioner also appears to be claiming that the evidence introduced at his trial is

17  insufficient to support the jury verdict against him.  Pet. at 11; Traverse at 3.  More specifically,

18  he argues that the physical evidence did not support a jury finding that he sexually assaulted J.J.

19  *Id.*  Assuming arguendo that this claim is properly raised in the petition before this court, it also

20  must be denied.

21         The Due Process Clause "protects the accused against conviction except upon proof

22  beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

23  charged." *In re Winship*, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a

24  conviction if, "after viewing the evidence in the light most favorable to the prosecution, any

25  rational trier of fact could have found the essential elements of the crime beyond a reasonable

26  doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "[T]he dispositive question under

27  Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a

28  reasonable doubt.'" *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443

1    U.S. at 318).  Put another way, "a reviewing court may set aside the jury's verdict on the ground

2    of insufficient evidence only if no rational trier of fact could have agreed with the jury."  *Cavazos*

3    *v. Smith*, ___ U.S. ___, 132 S.Ct. 2, *4 (2011).

4            In conducting federal habeas review of a claim of insufficient evidence, "all evidence

5    must be considered in the light most favorable to the prosecution."  *Ngo v. Giurbino*, 651 F.3d

6    1112, 1115 (9th Cir. 2011).  "Jackson leaves juries broad discretion in deciding what inferences

7    to draw from the evidence presented at trial," and it requires only that they draw "'reasonable

8    inferences from basic facts to ultimate facts.'"  *Coleman v. Johnson*,___ U.S. ___, 132 S.Ct.

9    2060, 2064 (2012) (per curiam) (citation omitted).  "'Circumstantial evidence and inferences

10   drawn from it may be sufficient to sustain a conviction.'"  *Walters v. Maass*, 45 F.3d 1355, 1358

11   (9th Cir. 1995) (citation omitted).  "A petitioner for a federal writ of habeas corpus faces a heavy

12   burden when challenging the sufficiency of the evidence used to obtain a state conviction on

13   federal due process grounds."  *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).

14           After reviewing the state court record in the light most favorable to the jury's verdict, this

15   court concludes that there was sufficient evidence introduced at petitioner's trial to support the

16   jury's verdict.  Given the nature and extent of the evidence against petitioner, a rational trier of

17   fact could have found the essential elements of the charged crimes beyond a reasonable doubt.

18   This is true even though there was other trial evidence which supported petitioner's version of the

19   events.  Accordingly, petitioner is not entitled to relief on this claim.

20                   **4.        Prosecutorial Misconduct**

21           Petitioner claims that the prosecutor committed misconduct by asking "leading and

22   argumentative questions" during his cross-examination of petitioner and by improperly asking a

23   witness "to speculate on another's state of mind."  Pet. at 35-41.  On appeal, petitioner also

24   claimed that the prosecutor committed misconduct in attempting to have one witness comment on

25   the veracity of another witness.  Resp't's Lodg. Doc. 5 at 36-43.  Although these claims are not

26   articulated in the body of the petition before this court, they are described in an exhibit attached to

27   the petition.  Accordingly, the court will assume that the claims have been properly raised and

28   will address them on the merits.

                                                    18

### a. State Court Decision

The California Court of Appeal denied petitioner's claims of prosecutorial misconduct, reasoning as follows:

> Defendant contends the prosecutor engaged in repeated acts of prejudicial misconduct when he: (1) sought to have one witness comment on the veracity of another witness; (2) asked argumentative questions of defendant; and (3) asked a witness to speculate on another witness's state of mind.  We reject the claim.
>
> **A**
>
> **Eliciting Witness's Belief That Victim Is Lying**
>
> During the prosecutor's cross-examination of defendant, the prosecutor established that defendant generally believed J.J. was truthful, but believed she was not truthful in her testimony regarding the charged incident.   The prosecutor then asked defendant, "You just didn't think she could do it, did you?," referring to J. J.'s being able to come into court and recount the details of the incident.  Counsel objected on grounds the question was "argumentative," and the court overruled the objection. Defendant responded, "Again, I would not know."
>
> """[A] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground— the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety.""" (*People v. Dykes* (2009) 46 Cal.4th 731, 760, 95 Cal.Rptr.3d 78, 209 P.3d 1.) Defendant's sole objection was that the question was argumentative, not that it was asking for defendant to comment on the truthfulness of J.J.[7]  Hence, the issue is forfeited for purpose of appellate review.[7]
>
> Additionally, even if preserved, we would reject the contention. The prosecutor's question cannot reasonably be understood as requesting defendant to comment on J. J.'s veracity.  The question went to defendant's, not J. J.'s, state of mind.  Specifically, whether it was part of defendant's plan that he could molest J.J. because she would be unable or unwilling to come into court to testify to the molestation.

/////

/////

/////

---

[7]   Citing pages 454 and 484 of the reporter's transcript, defendant claims he also objected to the question as calling for "speculation."  The objection on page 454 is solely that the question to J.J. was "argumentative," and page 484 contains the court's instructions to the jury.

**B**

**Leading And Argumentative Questions**

Defendant contends the prosecutor asked several leading and argumentative questions when cross-examining defendant. In the first cited instance, the prosecutor asked defendant if "35 to 45 minutes alone in the apartment with [J.J.] would give you plenty of time to put your finger in her vagina?" Defendant's objection that the question was "argumentative" was overruled, and he responded, "Yes, ma'am." Defendant contends the question was argumentative because it was a "speech meant to try to persuade the jury." (*See People v. Redd* (2010) 48 Cal.4th 691, 747, 108 Cal.Rptr.3d 192, 229 P.3d 101 ["'An argumentative question is a speech to the jury masquerading as a question'"].)

In the remaining instances, the prosecutor asked the following questions of defendant:

(1) After what had occurred with T. N., "[Y]ou were a little more concerned about being around children . . . as verbal and as seemingly intelligent as [T. N.]?" Defendant objected to the question as argumentative and lacking relevance, but the court overruled the objection.

(2) "You didn't figure that [J.J.] would be able to come in here and testify, did you?" The court overruled defendant's objection that the question called for speculation and was argumentative.

(3) "And the situation with [T.N.] didn't work out so well for you, did it?" The court overruled defendant's objection on grounds of "argumentative, [ir]relevance, and [Evidence Code section] 352."

(4) "And when you were living on Sicard [in Marysville] . . . you sort of looked for children who have—are not being watched after; isn't that correct [?]" Argumentative objection overruled.

(5) You gave J.J. a popsicle to keep "your little secret," and "[Y]ou had this all planned out, didn't you, Mr. Moss?" Objection as argumentative overruled.

(6) "And that plan had to be just—it had to be perfect timing, didn't it? You had to have just the right moment of opportunity to do what you did; isn't that correct?"

Defendant argues: "These multiple instances of argumentative questions, mostly unrestrained by the trial court, allowed the prosecutor to make her argument to the jury during the evidentiary portion of the trial, and then later to the jury during closing argument. Such misconduct prejudiced the defense."

Even if we were to agree with defendant that all of the questions were argumentative (a point we do not reach), defendant has failed to demonstrate prejudice. *People v. Price* (1991) 1 Cal.4th 324, 3 Cal.Rptr.2d 106, 821 P.2d 610, is instructive in these

circumstances.  There, the defendant complained of five occasions where the prosecutor committed misconduct by asking argumentative questions.  (*Id.* at p. 484, 3 Cal.Rptr.2d 106, 821 P.2d 610.)  None of the questions stated or implied facts not otherwise before the jury, and would not have been improper if made to the jury at the appropriate time.  Because the arguments could have been made during argument to the jury, the defendant suffered no prejudice. ( Ibid.)

Here, none of the questions the prosecutor asked stated or implied facts not before the jury or that would have been improper if made in argument.  Moreover, defendant has failed to persuade us that there is a reasonable probability he would have obtained a better result if the trial court had sustained his objections to these questions.  Thus, even if the questions were argumentative, like the defendant in *Price* defendant has failed to establish that he was harmed.

**C**

**Asking Witness To Speculate On Another Witness's State Of Mind**

Defendant contends the prosecutor committed misconduct when he asked defendant to speculate on "another's state of mind." Referring to the incident with T.N. at the apartment where defendant lived in Marysville, the prosecutor asked defendant, "Were you popular with the children of the apartment complex, Mr. Moss?"  The trial court overruled defendant's objection that the question was speculative and vague.  Defendant answered, "I wouldn't say I was popular, but they did like me."  When asked what was the difference, defendant explained, "Popular is like just exclusive like, oh, that's the first place they want to go, whereas, just somebody liking you, occasionally they come up and spend time with you."

Defendant argues, "the question called for [him] to divine what feelings other individuals harbored toward him.  This was speculation of the rankest kind."  Not so.  Reasonably understood, the question called for defendant to testify as to his state of mind, and not the children's.  Specifically, defendant was being asked whether he believed he was popular with the children. Consequently, the contention is rejected.

Opinion at 20-25.

### b.    <u>Applicable Legal Principles</u>

A criminal defendant's due process rights are violated when a prosecutor's misconduct renders a trial fundamentally unfair. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Claims of prosecutorial misconduct are reviewed "'on the merits, examining the entire proceedings to determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the

1    resulting conviction a denial of due process.'"  *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir.

2    1995) (citation omitted).  *See also Greer v. Miller*, 483 U.S. 756, 765 (1987); *Donnelly v.*

3    *DeChristoforo*, 416 U.S. 637, 643 (1974); *Towery v. Schriro*, 641 F.3d 300, 306 (9th Cir. 2010).

4    Relief on such claims is limited to cases in which the petitioner can establish that prosecutorial

5    misconduct resulted in actual prejudice.  *Darden*, 477 U.S. at 181-83.  *See also Towery*, 641 F.3d

6    at 307 ("When a state court has found a constitutional error to be harmless beyond a reasonable

7    doubt, a federal court may not grant habeas relief unless the state court's determination is

8    objectively unreasonable").  Prosecutorial misconduct violates due process when it has a

9    substantial and injurious effect or influence in determining the jury's verdict.  *See Ortiz-Sandoval*

10   *v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

11                            **c.        Analysis**

12          For the reasons expressed by the California Court of Appeal, any misconduct engaged in

13   by the prosecutor during his cross-examination of petitioner did not result in prejudice.  The

14   instances of misconduct about which petitioner complains were not so unfair as to constitute a

15   due process violation.  Certainly the decision of the state appellate court rejecting these claims of

16   prosecutorial misconduct is not "so lacking in justification that there was an error well understood

17   and comprehended in existing law beyond any possibility for fairminded disagreement."

18   *Richter*,131 S. Ct. at 786-87.  Accordingly, petitioner is not entitled to federal habeas relief on

19   this claim.

20          Petitioner has also failed to demonstrate that his trial counsel rendered ineffective

21   assistance in failing to object to the above-described instances of prosecutorial misconduct.  First,

22   as explained by the California Court of Appeal, petitioner's trial counsel did object to all of the

23   prosecutor's challenged cross-examination questions.  The sole exception was his failure to object

24   to the question asking whether petitioner believed the victim was lying, on the specific ground

25   that this question asked for a comment on the J.J.'s truthfulness.  However, trial counsel's failure

26   to object to this question on that ground was not prejudicial, since "the prosecutor's question

27   cannot reasonably be understood as requesting defendant to comment on J.J.'s veracity."  Opinion

28   at 21.  An attorney's failure to make a meritless objection does not constitute ineffective

1  assistance of counsel. *Jones v. Smith*, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing *Boag v.*

2  *Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985)).

3       Petitioner also appears to be claiming that the prosecutor violated the dictates of *Brady v.*

4  *Maryland*, 373 U.S. 83 (1963) when he failed to turn over to the defense J.J.'s medical

5  examination report. Pet. at 11. Petitioner specifically complains that the report was not given

6  "directly to the jury." *Id.*

7       The United States Supreme Court has held "that the suppression by the prosecution of

8  evidence favorable to an accused upon request violates due process where the evidence is

9  material either to guilt or to punishment, irrespective of the good faith or bad faith of the

10  prosecution." *Brady*, 373 U.S. at 87. *See also Youngblood v. West Virginia*, 547 U.S. 867, 869

11  (2006) ("A *Brady* violation occurs when the government fails to disclose evidence materially

12  favorable to the accused"). There are three components of a *Brady* violation: "[t]he evidence at

13  issue must be favorable to the accused, either because it is exculpatory, or because it is

14  impeaching; the evidence must have been suppressed by the State, either willfully or

15  inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82

16  (1999). In order to establish prejudice, petitioner must demonstrate that "'there is a reasonable

17  probability' that the result of the trial would have been different if the suppressed documents had

18  been disclosed to the defense." *Id.* at 289.

19       In the last reasoned decision on this claim, the California Superior Court ruled that

20  petitioner failed to show a *Brady* violation because he did not attach the medical report to his

21  habeas petition. Resp't's Lodg. Doc. 14 at 3.

22       The state court record reflects that the report of J.J.'s medical examination was admitted

23  into evidence as a prosecution exhibit. CT at 124. In addition, as explained above, the nurse

24  practitioner who generated the report was examined and cross-examined about her findings and

25  the notations on the report. Under these circumstances, petitioner has failed to show that the

26  prosecutor failed to turn over material exculpatory evidence to the defense. To the extent

27  petitioner is claiming the prosecutor's failure to give the jury a copy of the report constituted a

28  *Brady* violation, he has fails to cite any authority for such a claim.

1    The decision of the state courts rejecting petitioner's claims of prosecutorial misconduct is

2    not contrary to or an unreasonable application of United States Supreme Court authority.

3    Accordingly, petitioner is not entitled to relief on those claims.

4    **5.    Claim Raised in the Traverse**

5    In the traverse, petitioner raises a claim that the trial court erred in admitting into evidence

6    the videotape of J.J.'s interview with medical personnel.  As set forth above, a traverse is not the

7    proper pleading to raise additional grounds for relief.  However, assuming arguendo that this

8    claim is properly before this court, it must be denied.

9    The California Court of Appeal described the background to petitioner's claim in this

10   regard, and its ruling thereon, as follows:

11   > Defendant contends the trial court's failure to comply with the
12   > hearing and notice requirements of Evidence Code section 1360 in
     > admitting the videotape was prejudicial error.  We disagree.

13   > Evidence Code "[s]ection 1360 creates a limited exception to the
14   > hearsay rule in criminal prosecutions for a child's statement
     > describing acts of child abuse or neglect, including statements
     > describing sexual abuse.  [Citations.]  Section 1360 safeguards the
15   > reliability of a child's hearsay statements by requiring that: (1) the
     > court finds, in a hearing conducted outside the presence of the jury,
16   > that the time, content, and circumstances surrounding the
     > statement(s) provide sufficient indicia of reliability; (2) the child
17   > either testifies at the proceedings, or, if the child is unavailable to
     > testify, other evidence corroborates the out-of-court statements; and
18   > (3) the proponent of the statement gives notice to the adverse party
     > sufficiently in advance of the proceeding to provide him or her with
19   > a fair opportunity to defend against the statement."[8]  (*People v.*

20   _____

21   [8]   Evidence Code section 1360 provides in relevant part as follows: "(a) In a criminal
     prosecution where the victim is a minor, a statement made by the victim when under the age of 12
22   describing any act of child abuse or neglect performed with or on the child by another, or
     describing any attempted act of child abuse or neglect with or on the child by another, is not made
23   inadmissible by the hearsay rule if all of the following apply:

24   "(1) The statement is not otherwise admissible by statute or court rule.

25   "(2) The court finds, in a hearing conducted outside the presence of the jury, that the time,
26   content, and circumstances of the statement provide sufficient indicia of reliability.

27   "(3) The child either:

28   "(A) Testifies at the proceedings."

24

*Roberto V.* (2001) 93 Cal.App.4th 1350, 1367, 113 Cal.Rptr.2d 804.)

An appellate court reviews a trial court's admission of evidence pursuant to Evidence Code section 1360 for abuse of discretion.[9] (*People v. Roberto V., supra*, 93 Cal.App.4th at p. 1367, 113 Cal.Rptr.2d 804.)  Under that standard "'reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'"  (*People v. Hovarter* (2008) 44 Cal.4th 983, 1004, 81 Cal.Rptr.3d 299, 189 P.3d 300.)

**A**

**Procedural Setting**

On December 10, 2009, defendant filed several in limine motions, one of which was to exclude from evidence the videotape of the SAFE center interview with J.J. (the videotape) because it was: (1) hearsay; (2) more prejudicial than probative under Evidence Code section 352; and (3) unreliable and incompetent because of the age of the victim.

That same day the court conducted a hearing on the motion. Counsel argued the videotape should not be shown to the jury because it was irrelevant and cumulative since J.J. would be testifying.  Counsel acknowledged the videotape could become admissible if J.J. testified inconsistently with the videotape.

The prosecutor acknowledged the possibility that inconsistency in J.J.'s testimony would be a basis for admitting the videotape, and then added that the videotape was also admissible "under [Evidence Code section] 1360."  The prosecutor argued: "[O]bviously, the entire case rests on whether or not the jury is going to believe [J.J.], and this is a four-year-old girl who is reporting being sexually assaulted by a grown man.  That interview where she disclosed to the forensic interviewer that she had in fact been assaulted by the defendant was done in a very safe environment.  [¶]  Whether or not [J.J.] can testify to the same thing here in this courtroom in front of a group of strangers, and in fact, in front of [the defendant], remains to be seen.  [¶]  It is also an opportunity for the jury to see [J.J.] and to hear her statement as it was recorded and preserved and given to the defense in discovery, and I think that it is an important tool for the jury to have that prior interview done of [J.J.] closer in time to the incident."

---

[9]   Citing *People v. Eccleston* (2001) 89 Cal.App.4th 436, 107 Cal.Rptr.2d 440, defendant claims the standard of review for alleged errors in the admission of evidence under Evidence Code section 1360 is independent review.  *Eccleston* is distinguishable.  There, the victim did not testify but her statements were recounted by others and admitted pursuant to Evidence Code section 1360.  (*Eccleston*, at p. 439, 107 Cal.Rptr.2d 440.)  The "only issue" addressed was one of constitutional dimension, namely, whether this procedure violated the confrontation clause of the Sixth Amendment to the United States Constitution.  (*Ibid.*)  Here, defendant's contention is one of statutory compliance.  Hence, the standard of review is abuse of discretion.

Defendant offered nothing further on the issue and the trial court ruled it was going to admit the videotape.

**B**

**Sufficiency Of The Hearing**

Defendant argues the hearing on the videotape's admissibility was deficient because the record contains no indication the trial court had viewed any portion of the videotape, there was no testimony regarding the circumstances of the videotape's preparation or its reliability, there was "nothing specific to show" the videotape interview "was done in a neutral manner," and record fails to demonstrate the trial court weighed probative versus prejudicial value in admitting the videotape.  We are not persuaded.

While "the record must 'affirmatively show that the trial court weighed prejudice against probative value' [citations], the necessary showing can be inferred from the record despite the absence of an express statement by the trial court." (*People v. Prince* (2007) 40 Cal.4th 1179, 1237, 57 Cal.Rptr.3d 543, 156 P.3d 1015.)

Here, at the commencement of the hearing, the court stated: "I have received the motions in limine and have had an opportunity to review the motions in limine . . . ."  The prosecutor pointed out the interview was conducted by "a trained professional."  And, of no little consequence, the interview was videotaped thereby establishing the interview's accuracy and reliability.  Counsel having seen the videotape had ample opportunity both at the hearing and on this appeal to argue any deficiencies in the accuracy, reliability, or manner in which the hearing was conducted.  That he has not made any such argument strongly suggests that no such deficiencies exist.  Defendant received an adequate hearing on the videotape's admissibility.

**C**

**Notice Requirement**

Subdivision (b) of Evidence Code section 1360 provides: "A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party the intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings in order to provide the adverse party with a fair opportunity to prepare to meet the statement."

However, "questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal."  (*People v. Seijas* (2005) 36 Cal.4th 291, 301, 30 Cal.Rptr.3d 493, 114 P.3d 742.)   "The objection requirement is necessary in criminal cases because a 'contrary rule would deprive the People of the opportunity to cure the defect at trial and would

26

"permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal."'" (*People v. Partida* (2005) 37 Cal.4th 428, 434, 35 Cal.Rptr.3d 644, 122 P.3d 765.)

Here, neither in defendant's written motion to exclude the videotape nor at the hearing on that motion did defendant ever object to admission of the videotape for lack of notice.  Therefore, the issue is forfeited for review.

**D**

**Ineffective Assistance Of Counsel**

Defendant alternately argues ineffective assistance of counsel.  This argument is of no avail.  The record amply supports a finding that defendant had the notice required by Evidence Code section 1360, subdivision (b).   At the preliminary examination, which was conducted on June 3, 2009, Detective Carol Mims testified that as part of her investigation of the case she observed the videotaped interview with J.J. and described the content of the tape.

On December 10, 2009, defendant filed a motion to exclude, among other things, the showing of the videotaped interview to the jury. The basis for exclusion was that the statement constituted "inadmissible hearsay," its probative value was outweighed by its prejudicial effect (Evid.Code, § 352), and that the statement was "unreliable and incompetent" due to J. J.'s age.  That same day, the court conducted a hearing on the motion.  After hearing argument, the court stated it was going to admit the videotape and queried defendant's counsel on counsel's concern that the videotape may need to be redacted.  Counsel responded, "It's been a while since I have seen the [videotape].  I'll look at it again.  If I have a specific concern, I'll let [the prosecutor] know."  The court then denied the motion to exclude the videotape.  On December 17 the videotape was played for the jury.

Defendant does not dispute that he had advance notice of the existence of the videotape long before trial, but, he argues, knowing of the prosecutor's possession of the videotape is not notice of the prosecutor's intent to use the videotape.  Defendant claims he was prejudiced by this lack of notice because it precluded his counsel from being prepared to meet the issue of the videotape's admissibility.

/////

/////

/////

/////

/////

27

1

2

3

4

> Defendant's argument is, at best, a stretch.  At no time did defendant's counsel ever claim he was unprepared to contest admissibility of the videotape.  Indeed, he filed a motion to exclude the videotape days ahead of the commencement of trial.[10]  These circumstances adequately establish that defendant was on notice of the prosecution's intent to seek admission into evidence of the videotape.  There was no ineffective assistance of counsel.

5

Opinion at 8-15.

6

7

      To the extent petitioner is arguing that the trial court failed to comply with the

8

requirements of state law in admitting the videotape, his claim is not cognizable in this federal

9

habeas proceeding.  This Court is bound by the state court's interpretation of state law.  *See*

10

*Waddington v. Sarausad*, 555 U.S. 179, 129 S.Ct. 823, 832 n.5 (2009) ("we have repeatedly held

11

that 'it is not the province of a federal habeas court to reexamine state-court determinations on

12

state-law questions"); *Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("[A] mere error of state law

13

. . . is not a denial of due process") (quoting *Engle v. Isaac*, 456 U.S. 107, 121, n. 21 (1982) and

14

*Estelle v. McGuire*, 502 U.S. 62, 67, 72-73 (1991)); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)

15

("a state court's interpretation of state law . . . binds a federal court sitting in federal habeas");

16

*Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (federal habeas corpus relief does not lie for errors of

17

state law).

18

      Petitioner's entitlement to habeas relief on this ground does not turn on whether a state

19

evidentiary law has been violated, but whether the admission of the evidence "so infected the

20

entire trial that the resulting conviction violates due process."  *Estelle*, 502 U.S. at 72.  A writ of

21

habeas corpus will be granted for an erroneous admission of evidence "only where the 'testimony

22

is almost entirely unreliable and . . . the factfinder and the adversary system will not be competent

23

to uncover, recognize, and take due account of its shortcomings.'" *Mancuso v. Olivarez*, 292 F.3d

24

939, 956 (9th Cir. 2002) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983)).

25

      Evidence violates due process only if "there are no permissible inferences the jury may

26

draw from the evidence."  *Jammal*, 926 F.2d at 920.  Evidence must "be of such quality as

27

28

---

    [10]  "[F]or purposes of [Evidence Code] section 1360, trial begins when the jury is sworn." (*People v. Roberto V., supra*, 93 Cal.App.4th at p. 1372, 113 Cal.Rptr.2d 804.)

1   necessarily prevents a fair trial" for its admission to violate due process  *Id.* (quoting

2   *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986)).  Further, "an error that may

3   justify reversal on direct appeal will not necessarily support a collateral attack on a final

4   judgment."  *Brecht*, 507 U.S. at 637.  Under *Brecht*, habeas relief is available only where the error

5   had a "substantial and injurious effect or influence in determining [the] jury's verdict."  507 U.S.

6   at 637 (citing *Kotteakos v. United States*, 328 U.S. 750 (1946)).

7          Notwithstanding the above, the Ninth Circuit has observed that:

8              The Supreme Court has made very few rulings regarding the
               admission of evidence as a violation of due process.  Although the
9              Court has been clear that a writ should be issued when
               constitutional errors have rendered the trial fundamentally unfair
10             (citation omitted), it has not yet made a clear ruling that admission
               of irrelevant or overtly prejudicial evidence constitutes a due
11             process violation sufficient to warrant issuance of the writ.

12   *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).  Therefore, "under AEDPA, even

13   clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit

14   the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as

15   laid out by the Supreme Court."  *Id. See also Greel v. Martel*, No. 10-16847, 472 Fed. App'x

16   503, 504, 2012 WL 907215, *1 (9th Cir. Mar. 19, 2012) ("There is likewise no clearly established

17   federal law that admitting prejudicial evidence violates due process.").

18          In light of these authorities, the state court's rejection of petitioner's argument that the

19   trial court violated his right to due process in allowing the admission of the videotape of J.J.'s

20   interview does not support the granting of federal habeas relief under AEDPA.  There is no

21   "clearly established federal law" that the admission into evidence of a videotape pursuant to Cal.

22   Evid. Code § 1360 violates the Due Process Clause.  *Cf. Brodit v. Cambra*, 350 F.3d 985, 991

23   (9th Cir. 2003) (admission of evidence under California Evidence Code § 1360 did not clearly

24   offend defendant's due process rights).  *See Cunningham v. Grounds*, No. C 11-5576 LHK (PR),

25   2013 WL 2153283 (N.D. Cal. May 16, 2013) (evidence admitted pursuant to Cal. Evid. Code

26   § 1360 did not violate petitioner's right to due process); *Gonzales v. Adams*, No. EDCV 09-2047

27   PA (FFM), 2012 WL 1044411 (C.D. Cal. Jan. 11, 2012) (same).

28   /////

1    In any event, petitioner has failed to demonstrate that the admission of the videotaped

2  interview rendered his trial fundamentally unfair.  The challenged evidence was not unreliable

3  and it was relevant to evaluate the credibility of J.J.'s trial testimony.  Further, the statements on

4  the videotape were not materially inconsistent with J.J.'s testimony at trial.  Under these

5  circumstances, the trial court's admission of the videotape did not violate the due process clause.

6    Petitioner has also failed to show that his trial counsel rendered ineffective assistance in

7  failing to object to the introduction of the videotape.  As explained by the California Court of

8  Appeal, petitioner's trial counsel filed a motion in limine to exclude the videotape from evidence

9  and argued that motion at a hearing in the trial court.  Contrary to petitioner's allegations,

10  counsel's performance at the motion hearing was "within the range of competence demanded of

11  attorneys in criminal cases."  *McMann v. Richardson*, 397 U.S. 759, 771 (1970).  Accordingly, he

12  is not entitled to relief on this claim of ineffective assistance of counsel.

13  **III.    Conclusion**

14    For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

15  application for a writ of habeas corpus be denied.

16    These findings and recommendations are submitted to the United States District Judge

17  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

18  after being served with these findings and recommendations, any party may file written

19  objections with the court and serve a copy on all parties.  Such a document should be captioned

20  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

21  shall be served and filed within fourteen days after service of the objections.  Failure to file

22  objections within the specified time may waive the right to appeal the District Court's order.

23  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

24  1991).  In his objections petitioner may address whether a certificate of appealability should issue

25  /////

26  /////

27  /////

28  /////

1    in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing § 2254

2    Cases (the district court must issue or deny a certificate of appealability when it enters a final

3    order adverse to the applicant).

4    DATED:  April 10, 2014.

5                                                     EDMUND F. BRENNAN
                                                      UNITED STATES MAGISTRATE JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28